## WOOD v. NATIONAL HOME FOR DISABLED VOLUNTEER SOLDIERS, DANVILLE, ILL., et al.

### No. 247.

District Court, E. D. Illinois.
Jan. 3, 1935.

Ray M. Foreman, of Danville, Ill., for plaintiff.

Walter E. Ackerman, of Danville, Ill., for defendants.

LINDLEY, District Judge.

Plaintiff, as administrator of the estate of Walter Searles, deceased, brought this suit to recover pension moneys that had accumulated to his credit in the hands of the treasurer at the Soldiers' Home from payments by the Pension Board prior to his death. The case was tried without a jury upon an agreed statement of facts.

The deceased was an inmate and member of the National Home for Disabled Volunteer Soldiers (now by act of Congress, July 3, 1930 [46 Stat. 1016], Veterans' Administration Home of Danville, Ill., which is bound by the "contracts and obligations" of the predecessor), and died therein September 16, 1926, while a pensioner. Some $1,500 had been paid by the Pension Bureau in monthly installments to the treasurer of the home in the way of pensions for the deceased, and this remained on deposit with the treasurer at the time of deceased's death for his credit. Other detailed facts appear in the stipulation.

Title 24, § 136, U. S. Code (Act June 25, 1910), 24 USCA § 136, is as follows: "The application of any person for membership in the National Home for Disabled Volunteer Soldiers and the admission of the applicant thereunder shall be and constitute a valid and binding contract between such applicant and the Board of Managers of said home that on the death of said applicant while a member of such home, leaving no heirs at law nor next of kin, all personal property owned by said applicant at the time of his death, including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board of Managers for the sole use and benefit of the post fund of said home, * * * subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member."

Pursuant to said section, upon admission to the home, the deceased contracted that all of his personal property should upon his death, should he leave no heirs, at once pass to the board of managers, subject to be reclaimed "by any legatee or person entitled to take the same by inheritance."

Moneys such as these, under section 52, tit. 24, U. S. Code (24 USCA § 52), enacted August 17, 1912, are not a part of the funds of the home, but held by the treasurer in trust for the pensioner and in case of his death for his legal heirs. Pertinent provisions of that section are as follows: "The pensions of all inmates of the home, except such as shall be assigned as aforesaid, shall be paid to the treasurer of the home. The money thus derived shall not become a part of the funds of the home, but shall be held by the treasurer in trust for the pensioner to whom it would otherwise have been paid, and such part of it as shall not sooner have been paid to him shall be paid to him on his discharge from the institution. * * * In case of the death of any pensioner, any pension money due him and remaining in the hands of the treasurer shall be paid to his legal heirs, if demand is made within three years; otherwise the same shall escheat to the home."

Section 138 of title 24 of the U. S. Code (24 USCA § 138), enacted simultaneously with section 52, August 17, 1912, is as follows: "All pensions and arrears of pensions payable or to be paid to pensioners who are or may become inmates of the National Home for Disabled Volunteer Soldiers shall be paid to the treasurers of said home, to be disbursed for the benefit of the pensioners without deduction for fines or penalties, under the rules and regulations of said home. Said payments shall be made by the Bureau of Pensions upon a certificate of the proper officer of the Home that the pensioner is an inmate thereof on the day to which said pension is drawn. The treasurers of said home, respectively, shall give security, to the satisfaction of the managers of said home, for the payment and application by them of all arrears of pension and pension moneys they may receive under the aforesaid provision. Any balance of the pension which may remain at the date of the pensioner's discharge shall be paid over to him."

The next section, 139, enacted July 1, 1902 (24 USCA § 139), is as follows: "Any balance of pension money due a member of the National Home for Disabled Volunteer Soldiers at the time of his death shall be paid to his widow, minor children or dependent mother or father in the order named, and should no widow, minor child, or dependent parent be discovered within one year from the time of the death of the pensioner, said balance shall be paid to the post fund of the branch of said national

home of which the pensioner was a member at the time of his death, to be used for the common benefit of the members of the home under the direction of the Board of Managers, subject to future reclamation by the relatives designated in this section upon application filed with the Board of Managers within five years after the pensioner's death."

Under this section, if it controls, such accumulated funds, in case there is no widow, minor children, or dependent parents, must be paid to the post fund of the home.

It should be observed that there are certain earlier acts. Thus, section 2 of the Act of Feb. 26, 1881, c. 80 (24 USCA § 138 note), is as follows: "All pensions payable, or to be paid under this act, to pensioners who are inmates of the National Home for Disabled Volunteer Soldiers shall be paid to the treasurer or treasurers of said home, upon security given to the satisfaction of the managers to be disbursed for the benefit of the pensioners without deduction for fines or penalties under regulations to be established by the managers of the home; said payment to be made by the pension agent upon a certificate of the proper officer of the home that the pensioner is an inmate thereof and is still living. Any balance of the pension which may remain at the date of the pensioner's discharge shall be paid over to him; and in case of his death at the home, the same shall be paid to the widow, or children or in default of either to his legal representatives."

This act was expressly continued in force when a similar section, that of section 1 of the Act of August 7, 1882, c. 433 (24 USCA § 138 note), was enacted. The latter is as follows: "All pensions and arrears of pensions payable or to be paid to pensioners who are or may become inmates of the National Home for Disabled Volunteer Soldiers shall be paid to the treasurers of said home, to be applied by such treasurers as provided by law, under the rules and regulations of said home. Said payments shall be made by the pension agent upon a certificate of the proper officer of the home that the pensioner is an inmate thereof on the day to which said pension is drawn. The treasurers of said home, respectively, shall give security, to the satisfaction of the managers of said home, for the payment and application by them of all arrears of pension and pension-moneys they may receive under the afore-

said provision. And section two of the act entitled 'An act making appropriations for the payment of invalid and other pensions of the United States for the fiscal year ending June thirtieth, eighteen hundred and eighty-two, and for deficiencies, and for other purposes,' approved February twenty-sixth, eighteen hundred and eighty-one, is hereby revived and continued in force."

These sections have never been expressly repealed, but are omitted from the United States Code. The annotator of the Code suggests that these provisions were probably superseded by section 139 of the Code. Sections 52 and 136 are part of an Act of August 17, 1912, c. 301.

The enacting clause of the United States Code provides that the Code shall establish prima facie the laws of the United States in force December 7, 1925, but that nothing in the act shall be construed as repealing or amending any such law or as enacting as new law any matter contained in the Code. 44 Stat. pt. 1, p. 1 (1 USCA (title page) § 2 (a). It is further provided that, in case of any inconsistency between the provisions of any section of the Code and the corresponding portion of legislation theretofore enacted, effect shall be given for all purposes whatsoever to such prior enactments. Thus it is seen that, by the enactment of the Code and the exclusion therefrom of certain sections of prior legislation and the inclusion of others, it is not intended to repeal any such excluded sections of prior legislation.

From this recital of the provisions of the various sections it is apparent that, beginning with 1881, Congress has constantly given expression to an intent that pension moneys paid to the treasurer of a home for disbursement to an inmate of the home should become and be the property of the inmate, and, in case of his death, of his widow and children. Such was the provision of the act of 1881, continued in full force by the act of 1882, neither of which has ever been expressly repealed.

In this situation, on July 1, 1902, section 139 was enacted. This act did not purport to repeal the previously existing sections, but did provide that "any balance of pension money due a member" at the time of his death should be paid "to his widow, minor children or dependent mother or father," and, should no such relative be discovered, that the balance should be paid to the "post fund," subject to "reclamation by

the relatives designated in this section," provided application be made within five years after pensioner's death. If it be admitted that this section impliedly repealed the provisions of the acts of 1881 and 1882 so that money and other property in the hands of the treasurer could pass only to the relatives designated in section 139, we have left for determination the effect of the subsequent legislation of 1910 and 1912. Thus we find that in section 52, in 1912, Congress expressly provided that the pensions of all inmates should be paid to the treasurer, but should not become a part of the funds of the home, but should be held by the treasurer in trust for the pensioner, and that, in case of the death of any pensioner, any pension money due him and remaining in the hands of the treasurer should be paid to his legal heirs, if demand should be made within three years. Otherwise the same would escheat to the home. Section 136, adopted in 1910, subsequent to the enactment of section 139, provides that pension money and all moneys and choses in action held by the treasurer for the pensioner, if the latter should die leaving no heirs at law or next of kin, should vest in the board of managers "subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member."

The last expression of the legislative will must prevail, and, though implied repeals are not favored and must be established by clear and convincing evidence of an intention to repeal, the history of the legislation and the language of the last expression of the Congress demonstrate to the mind of this court beyond cavil that sections 52 and 136 adopted in 1910 and 1912, and expressly providing that the money collected by the treasurer for the benefit of the pensioner should be held in trust by the treasurer of the home and paid to his heirs, legatees, or next of kin, must prevail over the earlier act of 1902 seemingly, but not clearly indicating, a contrary intent.

If we are to give strict effect to the provisions of section 139 and apply the same to the present case, then the purpose of sections 52 and 136, enacted later, is entirely nullified, and Congress in enacting the same did a futile thing. Presumably Congress intended what it said, and, its language being inconsistent with the previously existing legislation and plain and unambiguous, it follows that the plaintiff must prevail.

Judgment will enter for the amount of the deposit $1,546.47, plus interest thereon at the rate of 5 per cent. per annum since October 1, 1926, or $2,223.02, and costs of suit.