**NATIONAL HOME FOR DISABLED VOLUNTEER SOLDIERS, DANVILLE, ILL., et al. v. WOOD.**

**No. 5477.**

Circuit Court of Appeals, Seventh Circuit.

Feb. 19, 1936.

Arthur Roe, U. S. Atty., of Vandalia, Ill., Walter E. Ackermann, Asst. U. S. Atty., of Belleville, Ill., and James T. Brady, Sol. Veterans' Administration, and John M. George, Atty. Veterans' Administration, both of Washington, D. C., for appellants.

Lawrence T. Allen, Everett L. Dalbey, and Ray M. Foreman, all of Danville, Ill., for appellee.

Before EVANS and ALSCHULER, Circuit Judges, and BALTZELL, District Judge.

ALSCHULER, Circuit Judge.

The facts all appear by stipulation. Walter Searles, a veteran Union soldier of the Civil War, died intestate September 16, 1926, while an inmate of the Danville Branch of the National Home for Disabled Volunteer Soldiers, a corporation which by act of Congress became the Veterans' Administration Home of Danville, Ill., bound by the obligations of its predecessor. He left no property save the hereinafter mentioned pension money. Surviving him is an only child, Herbert A., then about forty-five years old. Deceased left no widow or parent.

Deceased had long been receiving a soldier's pension, which, while he was an inmate of the home, was periodically paid to its treasurer for disbursement under applicable statutes and regulations. Upon his death, and after certain uncontested disbursements, there remained in the hands of the treasurer of the home a balance of such pension money of $1,546.47, to recover which the suit was brought by the administrator of the deceased for the benefit of Herbert. The court found for appellee and rendered judgment for the amount of the pension money, including interest thereon at 5 per cent. from date of death, and for costs.

The primary question is to whom pension moneys in the hands of the treasurer

of the home are payable on the death of the veteran while an inmate of the home.

Appellant contends that the applicable statute is 32 Stat. 564 (24 U.S.C.A. § 139),[1] which was enacted July 1, 1902, and that under this section only a widow, minor child, or dependent parent may take the balance of the pension money in the treasurer's hands; that Herbert was not one of the designated relatives who might claim, and that no action on his behalf would lie.

Appellee contends that the statute which governs is 36 Stat. 736,[2] adopted June 25, 1910 (24 U.S.C.A. § 136), which provides that reclamation of personal property, which under that act passed to the home, might be made within five years after the death by a legatee or by persons who may take by inheritance.

The 1902 act had reference only to pension money, and did not apply to any other personal property of the soldier. It specified that these moneys shall become the property of the home if not claimed within five years from the death by one of the specified relatives. The 1910 act is far more comprehensive in its provisions. It deals with personal property of every kind of which the deceased inmate died possessed, specifically including "proceeds of pensions." It undertakes to prevent escheat to the state of all personal property left by the deceased, where he leaves no heirs at law or legatees who may take. But it does not stop with providing against escheat to the state; it goes further by definitely specifying that upon the death all of his personal estate, including proceeds of pensions, shall go to the corporation, subject to reclamation within five years by legatees and persons who may take by inheritance. In this respect, as to pension money it enlarged the provisions of the prior act by specifying the permissible reclaimants as "any legatee or person entitled to take the same by inheritance"; whereas under the first act the pension money would pass to the corporation only in case the deceased soldier left no widow, minor child, or dependent parent.

It seems to us that if this part of the 1910 statute does not intend to enlarge the class of persons who may reclaim pension money over the limitations thereon as imposed by the previous act, that part of the later act, when applied to pension money which it specifically includes, would have no force or effect whatever.

Our attention has been directed to the Congressional Record, vol. 47, part 7, pp. 7011, 7012, 7101, as indicating the intended scope of the act of 1910. True it is that the proponents of that measure did explain that it was intended to leave the

---

[1] "Hereafter any balance of pension money due a member of the National Home for Disabled Volunteer Soldiers at the time of his death shall be paid to his widow, minor children or dependent mother or father in the order named, and should no widow, minor child, or dependent parent be discovered within one year from the time of the death of the pensioner, said balance shall be paid to the post fund of the Branch of said National Home of which the pensioner was a member at the time of his death, to be used for the common benefit of the members of the Home under the direction of the Board of Managers, subject to future reclamation by the relatives hereinbefore designated, upon application filed with the Board of Managers within five years after the pensioner's death."

[2] "Hereafter the application of any person for membership in the National Home for Disabled Volunteer Soldiers and the admission of the applicant thereunder shall be and constitute a valid and binding contract between such applicant and the Board of Managers of said home that on the death of said applicant while a member of such home, leaving no heirs at law nor next of kin, all personal property owned by said applicant at the time of his death, including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board of Managers for the sole use and benefit of the post fund of said home, the proceeds to be disposed of and distributed among the several branches as may be ordered by said Board of Managers, and that all personal property of said applicant shall, upon his death, while a member, at once pass to and vest in said Board of Managers, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member. The Board of Managers is directed to so change the form of application for membership as to give reasonable notice of this provision to each applicant and as to contain the consent of the applicant to accept membership upon the conditions herein provided."

soldier free to dispose of his personal property, including pension money, as he saw fit, and was directed to preventing escheat to the state in case of his death intestate without legatees or persons who may inherit from him. But, as has been shown, the act does provide that while the personal property, including pension money, passes to the Board of Managers of the home, reclamation may be made by those entitled to take by inheritance or by will without any restrictions upon members of that class; whereas the prior act limited those who might claim the pension money to widow, minor child, and dependent parent. This change has no bearing on the matter of escheat to the state.

The Congressional Record does not indicate that any question was raised or discussed with respect to those who might reclaim pension money—whether those as generally specified in the proposed act or the more limited class as provided in the earlier act. Neither does it appear that any distinction was suggested between the reclaiming of proceeds of pensions and of other personal property of the deceased. Considerable was said concerning the right of the soldier to dispose of his property as he saw fit, and assurance was given that no limitation upon this right was intended. In our judgment the discussion, far from indicating that the proposed act would hark back to previous legislation whereunder only certain of the heirs at law might claim it, indicated an intent that the soldier should have full right to dispose of his personal property, including pension money, by giving right of reclamation from the home to which it would pass under the terms of the proposed act, to the soldier's legatees or those entitled to take from him by inheritance, without continuance of the greater restriction of the prior act as to those who might thereunder reclaim pension money. This provision evidently met with the concurrence of those members who were apparently favorable to the soldier's fullest control of his property, including pension money, and probably for this reason it evoked no discussion. The right of reclamation thus fixed as to all his personal property, including pensions, in our judgment necessarily supplants the prior act so far as its class of claimants is more restricted. We conclude that the act of 1910 is here controlling, and that under it Herbert, the only child of his intestate father, although not a mi-

nor, is entitled to reclaim this pension money.

We reach this conclusion with that reluctance and hesitation which of necessity is induced by the contrary view of the Circuit Court of Appeals for the First Circuit, as announced in Durack v. National Home for Disabled Volunteer Soldiers, 44 F.(2d) 516.

■ Under appellants' assignment of error "that the court has no jurisdiction over the subject matter and parties to this cause," they urge that the District Court had no jurisdiction to entertain the cause as against appellants. The reasoning is that the said Act of Congress of July 3, 1930, provides for the transfer of jurisdiction over property of those homes from the corporation to the Veterans' Administration, and authorizes suits for claims to be brought against the United States, and that therefore the action should have been brought against the United States and not against appellants. No such question was raised by the pleadings, and the stipulation of facts into which the parties entered specifies: "(12) That the Court has jurisdiction of the parties plaintiff and defendant herein and of the subject matter hereof."

In the same brief appellants, in support of their contention that interest and costs were improperly allowed to appellee, said:

"This suit is in fact a suit against the United States. United States v. Golden, 34 F.(2d) [367, 376].

"In actions where any agency of the Government is a party, the court looks through the nominal party and treats the case as one in fact against the Government. State Highway Commission of Wyoming v. Utah Const. Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262; Schroeder v. Davis, 32 F.(2d) 455 (8 C.C.A.); Kansas v. United States, 204 U.S. 331, 27 S.Ct. 388, 51 L. Ed. 510; U. S. v. Golden, supra."

Accepting this view, we regard the action, though nominally against an agency of the United States, as in fact against the United States. The defense was undertaken and conducted solely by the United States attorney and his official assistant, without in any way challenging the propriety of the action as brought, but, on the contrary, distinctly stipulating the jurisdiction of the court over parties and subject matter.

Appellants' insistence of error in the allowance of interest is not well grounded. The stipulation recites that shortly after the soldier's death demand was made, by or in behalf of Herbert, on the Board of Managers of the home for payment of the balance of this pension money. Holding as we do that he was entitled to reclaim it, the demand fixed his status as a reclaimant as of that time. It should then have been paid, and failing then to pay it the Board would have been liable for interest for the time payment was withheld.

Section 5 of said Act of July 3, 1930 (38 U.S.C. § 11d(b) [38 U.S.C.A. § 11d (b)]), permits allowance of interest against the United States where interest would have been allowable against the corporation before the passage of the act; and we find no error in this allowance of interest.

As to the costs, we are of opinion they should not have been adjudged against appellants, and this item should be eliminated from the judgment. ·

Except as to the item of costs, the judgment of the District Court is affirmed, and the District Court is directed to eliminate from the judgment the award of costs against appellants.