## NATIONAL HOME FOR DISABLED VOLUNTEER SOLDIERS ET AL. *v.* WOOD, ADMINISTRATOR.

No. 70.   Argued November 13, 16, 1936.—Decided December 7, 1936.

*Assistant Attorney General Morris,* with whom *Solicitor General Reed* and *Messrs. Paul A. Sweeney* and *Charles A. Horsky* were on the brief, for petitioners.

*Mr. Ray M. Foreman,* with whom *Mr. Lawrence T. Allen* was on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

Decedent was an honorably discharged volunteer soldier of the Civil War. In 1904, he was allowed a pension. October 19, 1924, having made application and signed an agreement in accordance with the Act of June 25, 1910,[1] he was enrolled as a member and admitted to the Danville branch of the National Home for Disabled Volunteer Soldiers, and continued to be an inmate until he died, September 16, 1926. During that period the United States paid his pension, in instalments of $72 per month, to the treasurer of the branch. He died intestate, leaving as his sole heir at law, a son over 21 years old. Respondent brought this action to recover $1546.47 of his pension money remaining in the hands of the treasurer after deductions as to which no question has been raised. The District Court gave judgment for that amount with interest and costs. 9 F. Supp. 403. The Circuit Court of Appeals affirmed except as to costs.[2] 81 F. (2d) 963. That decision, being in conflict with one of the Circuit Court of Appeals for the First Circuit, *Durack* v. *National Home,* 44 F. (2d) 516, this court granted a writ of certiorari.

Petitioners raise a single question. They maintain that, since the decedent did not leave a widow, minor child or dependent mother or father, the accumulated pension fund became payable at his death to the post fund of the Danville branch. If the Act of July 1, 1902,[3] governs, the balance belongs to the post fund. If, as held below, the Act of 1910 and the agreement made in

---

[1] 36 Stat. 736. 24 U. S. C., § 136.

[2] The Circuit Court of Appeals held: Although governmental agencies are named defendants, the suit is in fact one against the United States; § 5, Act of July 3, 1930, 46 Stat. 1017, 38 U. S. C., § 11d, permits allowance of interest against the United States, but costs should not have been allowed.

[3] 32 Stat. 564. 24 U. S. C., § 139.

accordance with it control, the administrator is entitled to recover.

Section 2 of the Act of February 26, 1881, provides: "All pensions payable . . . under this act, to pensioners who are inmates of the National Home for Disabled Volunteer Soldiers shall be paid to the treasurer . . . of said home . . . to be disbursed for the benefit of the pensioners . . . Any balance of the pension which may remain at the date of the pensioner's discharge shall be paid over to him; and in case of his death at the home, the same shall be paid to the widow, or children or, in default of either, to his legal representatives." [4]

Applicable to the pension money held by the branch were rules and regulations declaring: A pensioner, not classed as incompetent, may direct that all or any portion of his pension money be sent to his wife, minor child or dependent relative; the governor of a branch may prevent hurtful,, wasteful or extravagant use of the pension money by retaining a sufficient amount until the danger has passed; pension money standing to the credit of a member sick in hospital will be paid directly to him in such amounts only as are necessary for his personal use; in the case of members classed as incompetent, payment of pension money may be made as follows: (a) to the surgeon in such sums as may be

---

[4] 21 Stat. 350. Section 2 is contained in an Act making appropriations to pay pensions for the fiscal year ending June 30, 1882. It was applicable only to pensions paid out of the money so appropriated. The Act of August 7, 1882, 22 Stat. 322, provided: "That all pensions and arrears of pensions payable or to be paid to pensioners who are or may become inmates of the National Home for Disabled Volunteer Soldiers shall be paid to the treasurers of said home, to be applied by such treasurers as provided by law, under the rules and regulations of said home. . . . And section two of the act . . . approved February twenty-sixth, eighteen hundred and eighty-one, is hereby revived and continued in force." Cf. 24 U. S. C., § 138.

necessary for the personal expenses of the member (b) to a wife, minor child or dependent relative upon the authority of the president of the board of managers (c) to pay taxes, etc., when necessary to protect the interests of the member.[5]

The Act of July 1, 1902, provides:

"Hereafter any balance of pension money due a member of the National Home . . . at the time of his death shall be paid to his widow, minor children or dependent mother or father in the order named, and should" none "be discovered within one year from the time of the death . . . said balance shall be paid to the post fund of the Branch . . . of which the pensioner was a member at the time of his death . . . subject to future reclamation by the relatives hereinbefore designated, upon application filed . . . within five years after the pensioner's death." [6]

Petitioners maintain, and for the purposes of this decision we assume without deciding, that the Act of 1902 relates to pension money paid to the treasurer of a national home for the use and benefit of a member and held by him at the time of the member's death. But it contains nothing that relates to use or disposition of the fund while the pensioner is alive. It relates exclusively

---

[5] Par. 253, Regulations of the National Home for Disabled Volunteer Soldiers, 1918, as amended.

[6] Cf. § 4, Act of March 3, 1883, 22 Stat. 564, 24 U. S. C., § 52, prescribing regulations for the Soldiers' Home, Washington, D. C. It provides: " . . . The pensions of all who . . . are . . . inmates of the Home . . . shall be paid to the treasurer of the Home. The money thus derived shall not become a part of the funds of the Home, but shall be held by the treasurer in trust for the pensioner . . . and such part of it as shall not sooner have been paid to him shall be paid to him on his discharge from the institution. . . . In case of the death of any pensioner, any pension money due him and remaining in the hands of the treasurer shall be paid to his legal heirs, if demand is made within three years; otherwise the same shall escheat to the Home."

to disposition of the balance in the hands of the treasurer at the time of death. In that respect alone, it conflicts with and supersedes the corresponding provisions of the Act of 1881.

The scope and effect of the Act of June 25, 1910, remain to be considered. It provides:

"Hereafter the application of any person for membership in the National Home . . . and the admission of the applicant thereunder shall be and constitute a valid and binding contract between such applicant and the Board of Managers of said home that on the death of said applicant while a member . . . leaving no heirs at law nor next of kin, all personal property owned by said applicant at the time of his death, including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board . . . for the sole use and benefit of the post fund of said home . . . and that all personal property of said applicant shall, upon his death, while a member, at once pass to and vest in said Board . . . subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member. . . ."

Before that enactment, it was disclosed that in the National Home a substantial number of inmates died intestate and without heirs, leaving not only the balance of their pension money remaining in the hands of the branch treasurer but also money on deposit in banks. The Act directs the disposition of personal property left by members dying intestate and without heirs. Congress intended to vest in the board of managers for the post fund only that which, for lack of testamentary disposition and heirs at law, would be liable to escheat to the State. Whether the Act extends to the balance of decedent's pension money accumulated in the hands of the branch

treasurer depends upon the meaning to be given to the words "all personal property owned by said applicant at the time of his death, including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived." The words "all personal property" are broad enough to include his beneficial interest in the trust fund created by payments of his pension to the treasurer. The words "including money or choses in action" obviously do not exclude that money. There is nothing to suggest that the phrase "whether such property be the proceeds of pensions or otherwise derived" was intended to eliminate the pension money. It indicates purpose to extend not to restrict. Even if "proceeds of pensions" might be held to refer to something other than pension money, that meaning would have no tendency to exclude funds in the hands of the treasurer. The measure leaves the member free to dispose by will and safeguards to the legatees and heirs the right within five years to reclaim "all the property" that belonged to him at the time of his death. As to that, there is no ambiguity and therefore nothing to construe. To the extent that, in respect of disposition of the pension money in the hands of the treasurer at the time of the member's death, the Act of 1910 is inconsistent with the Act of 1902, the latter is superseded. It follows that respondent is entitled to the fund in question.

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.