**STEVENS et al. v. UNITED STATES.**

No. 3201.

Circuit Court of Appeals, First Circuit.

March 15, 1937.

152

MORTON, Circuit Judge, dissenting.

James E. Carroll, of Boston, Mass., for appellants.

Frank W. Tomasello, Asst. U. S. Atty., of Boston, Mass. (Francis J. W. Ford, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the federal District Court for Massachusetts ordering the Chelsea Trust Company of Chelsea, Mass., one of the defendants, to pay to the plaintiff through its representative, Thomas Quinn, General Counsel of the Veterans' Bureau for the District of Massachusetts, the full amount of the deposit and accumulations thereon standing in the name of Thomas McGovern, the deceased veteran named in the bill of complaint; and enjoining the other defendants from transferring, encumbering, or in any way asserting any claim to said deposit and accumulations. The action is a suit in equity brought in the name of the United States against the Chelsea Trust Company, a Massachusetts corporation doing a banking business in Chelsea, Mass., and Helen J. Stevens, a citizen of Massachusetts, individually and as administratrix of both the estate of Thomas McGovern and the estate of his deceased widow, and Catherine E. McGovern, a citizen of Massachusetts, Lena F. Donovan, a citizen of Connecticut, and Robert E. McGovern, an insane person, also a citizen of Massachusetts. The action is brought to have a deposit in the defendant bank, standing in the name of Thomas McGovern at the time of his death, declared the property of the plaintiff for the benefit of the Board of Managers of the National Home, at Hampton, Va.

The action arises out of the following facts which are stipulated by the parties or admitted by the defendants' answers to the allegations of the bill of complaint:

It appears that Thomas McGovern enlisted in the United States army in 1877, and was honorably discharged in 1882; that on November 11, 1925, when 72 years of age, he was admitted to the Southern Branch of the National Home for Disabled Volunteer Soldiers, at Hampton, Va., under the provisions of the Act of Congress of June 25, 1910 (24 U.S.C.A. § 136); that in his application for admission McGovern entered into an agreement in accordance with the requirements of said act; that he died September 17, 1928, at the home, while a member thereof; that at the time of his death his wife, Annie J. McGovern, resided in Boston; that Helen J. Stevens and Catherine E. McGovern, daughters of said McGovern, were then living in Boston, and that a daughter, Lena F. Donovan, was living in New Haven, Conn., and a son, Robert E. McGovern, at Gardner, Mass., having been committed as an insane person to the State Hospital in 1918; that the widow and children were his heirs at law; that at the time of McGovern's death his legal domicile was in Chelsea, Mass., which was his residence at the time of his admission to the home; that he had not lived with his wife and daughters since 1904, who had no knowledge of his whereabouts for the last twenty years of his life; that the father and son had lived together in Chelsea up to 1918, when the latter was committed as an insane person; that the first knowledge of McGovern's death received by any of the defendants was on October 19, 1935, in a letter from the home addressed to the daughter, Mrs. Stevens; that after McGovern's death no official or any one in behalf of the home made any endeavor to locate the wife or any of the four children; that at the time of his death he had a deposit in the defendant bank, account No. 1295, showing a balance due him as of July 3, 1925, of $3,841.10; that this deposit was not the proceeds of a government pension or any other kind of gratuity from the government, but was his own personal estate; that the wife, Annie J. McGovern, died March 4, 1933, in Boston, where she resided; that the defendant Helen J. Stevens had been duly appointed administra-

trix of the estates of her mother and father; and that James E. Carroll of Boston had been duly appointed guardian of the son.

In his application for admission to the home, McGovern stated that he was married, that he had four children living, but that their names and addresses were unknown.

The Act of Congress of June 25, 1910, c. 384, § 1 (36 Stat. 736 [24 U.S.C.A. § 136]), provides:

"The application of any person for membership in the National Home for Disabled Volunteer Soldiers and the admission of the applicant thereunder shall be and constitute a valid and binding contract between such applicant and the Board of Managers of said home that on the death of said applicant while a member of such home, leaving no heirs at law nor next of kin, all personal property owned by said applicant at the time of his death, including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board of Managers for the sole use and benefit of the post fund of said home, the proceeds to be disposed of and distributed among the several branches as may be ordered by said Board of Managers, and that all personal property of said applicant shall, upon his death, while a member, at once pass to and vest in said Board of Managers, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member. The Board of Managers is directed to so change the form of application for membership as to give reasonable notice of this provision to each applicant, and as to contain the consent of the applicant to accept membership upon the conditions herein provided [in this section]."

This is understood to be the first time the validity of the act, in so far as it relates to personal property owned by a member of a home at the time of his death, no part of which was pension money, or the proceeds of pension money, has been questioned. But here the appellants contend that the act is unconstitutional, in so far as it undertakes, upon the member's death, to vest title to such property in the board of managers where he leaves surviving him heirs or next of kin, and also in so far as it subjects them to a proceeding to reclaim the same within five years after the member's death without requiring notice of the death to be given, so that they may assert a reclamation claim.

The act makes no provision of any kind requiring the board of managers or any one connected with the home to give notice to the heirs or next of kin of the death of a member, whether they know or have reason to believe that he left heirs or next of kin or not. It seems to us that if Congress had the power to legislate concerning the devolution of the personal property of a deceased member, none of which was pension money or derived from the government, that in order to foreclose the rights of heirs or next of kin within five years after the death of the member, it should have provided for the giving of notice of his death by publication and otherwise, so that the heirs or next of kin would at least have an opportunity to assert a claim of reclamation within the period of five years limited by the statute; and that in no event should they be deprived of their rights in the estate of the deceased member without notice and an opportunity to assert a claim. See Wilbur v. Tobey, 16 Pick. (Mass.) 177, 180; Hamilton v. Brown, 161 U.S. 256, 268, 269, 270, 275, 16 S.Ct. 585, 40 L.Ed. 691; Christianson v. King County, 239 U.S. 356, 36 S.Ct. 114, 60 L.Ed. 327. Here no notice was given or attempted to be given, and no knowledge of the death of the member was acquired until October 19, 1935, more than five years after his death on September 17, 1928, when a letter from the home giving such information was received by the defendant Stevens.

But, independent of the fact that the act makes no provision for notice, the question arises, under what provision of the Constitution Congress acquired power to enact a law providing that, upon the death of a member, all of his personal property of the character here in question shall "at once pass to and vest in said Board of Managers" and not in the administrator or administratrix of his estate appointed under the laws of the state in which he was domiciled at the time of his death, and where it will be administered according to such laws for the benefit of his creditors and heirs at law or next of kin. No such provision has been called to our attention and we know of none.

The Tenth Amendment to the Constitution provides that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

From a time antedating the adoption of the Federal Constitution, the states have uniformly enacted laws providing for the devolution of property of intestates dying domiciled within their borders, and such laws have been enacted and are in force in Massachusetts, where McGovern was domiciled at the time of his death. They provide for the appointment of administrators to administer the estate of persons dying intestate (Gen.Laws Mass.1921, c. 193), for the ascertainment of the property belonging to the estate, the determination and payment of its debts, and the distribution of the remainder among the heirs. And chapter 190 provides that the surviving wife, after payment of the debts of the deceased, and the charges of his last sickness and funeral, and of the settlement of his estate, and subject to chapter 196, if he leaves issue surviving, shall take one-third of the personal estate, and the remainder shall be divided in equal shares among his children.

Under the laws of Massachusetts the title to the personal property of a decedent vests, in the first instance, in the administrator; but under the act of Congress of 1910 it is made to vest in the board of managers, and the title becomes absolute in that board unless the heirs and next of kin by some good fortune, not provided for in the act, acquire notice of the death of the member and begin reclamation proceedings within five years of his death.

We think that Congress in the enactment of the above statute, in so far as it provides that the personal property of a deceased member, no part of which was acquired from the government as pension money or bounty, "shall at once pass to and vest in the Board of Managers," acted without authority and in violation of the reserved rights of the states; that the act in this respect and to this extent is unconstitutional and void (see United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914; and that the contract based upon the act rises no higher than the act on which it is based. It was at most but an attempt to make a future testamentary disposition of McGovern's property, when such a disposition could only be effected by will.

Whether the pension money of a deceased member of a home, in the hands of its treasurer at the time of death, was included within the provisions of the act of 1910, was a close and doubtful question. It was held by this court in 1930 not to be. Durack v. National Home for Disabled Volunteer Soldiers (C.C.A.) 44 F. (2d) 516. But in December, 1936, when the question came before the Supreme Court, it was held that such money was embraced within the terms of the act of 1910 and went to the new class of beneficiaries named in that act. National Home for Disabled Volunteer Soldiers v. Wood, 299 U.S. 211, 57 S.Ct. 137, 81 L.Ed. —. It is assumed, so far as this case is concerned, that Congress had the power to determine how its own gifts of pension money, remaining in the hands of the treasurer of a home at the time of a member's death, should be disposed of; and that, as to such money, the act of 1910 was constitutional. But we have no such question before us for decision.

The decree of the District Court is vacated, and the case is remanded to that court with directions to enter a decree in favor of the administratrix of the estate of Thomas McGovern.

MORTON, Circuit Judge (dissenting).

Admission to the Soldiers' Home was a special privilege. to which the government had the right to attach any conditions which it saw fit. Those with which we are concerned are contained in an act of Congress. No question can therefore be raised as to their reasonableness, as it might be, perhaps, if they had been made by an administrative board. McGovern agreed in the most explicit way that, if admitted to the home, all his personal property should, upon his death while a member of the home, at once pass to and vest in its board of managers, subject to being "reclaimed" by any person entitled to take it by inheritance at any time within five years after his death. The act itself provides that acceptance of the application shall constitute such a contract, and it also provides for explicit notice of this provision to all applicants for admission.

Contracts to dispose of one's property in a specified way at one's death are valid. Ex parte Simons, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094; Jenkins v. Stetson, 9 Allen (Mass.) 128; Parker v. Coburn, 10 Allen (Mass.) 82. It has also been held that the particular form which the con-

tract takes is not material; if the intention is clear and the consideration adequate and there was no taint of fraud or overreaching, the contract will be enforced. Strakosch v. Connecticut Trust & Safe Deposit Co., 96 Conn. 471, 114 A. 660; Best v. Gralapp et al., 69 Neb. 811, 96 N. W. 641, 99 N.W. 837, 5 Ann.Cas. 491, per Roscoe Pound, Commissioner; Keefe v. Keefe et al., 19 Cal.App. 310, 125 P. 929; Johnson v. Hubbell, 10 N.J.Eq. 332, 66 Am. Dec. 773, with full notes.

My brethren refer to the fact that no notice of McGovern's death was sent to his family by the authorities of the home, and intimate that there should have been a provision for such notice, or at least for notice by publication in the act, in order to make it valid. But Congress may well have thought that, if an inmate's relatives had so completely lost touch with him that they did not learn of his death for five years after it occurred, it would be proper that such personal property as he left should go to the government on whose bounty he had been living, rather than to them. The whole matter is one of contract, and I see no sufficient reason for not giving full effect to the contract which McGovern made. National Home v. Wood, 299 U.S. 211, 57 S.Ct. 137, 81 L.Ed. ——. It does not seem to me that in imposing this condition on admissions to the home Congress infringed the reserved right of the states to control the disposition of the property of decedent or in any other respect acted unconstitutionally. I think that the judgment appealed from should be affirmed.