## RECONSTRUCTION FINANCE CORPO-RATION v. J. G. MENIHAN CORPO-RATION et al.

### No. 252.

Circuit Court of Appeals, Second Circuit.

May 13, 1940.

CLARK, Circuit Judge, dissenting.

———◇———

Werner, Harris and Tew, of Rochester, N. Y. (Hugh J. O'Brien, of Rochester, N. Y., of counsel), for appellants.

Effingham Evarts, of New York City (C. J. Durr, Asst. Gen. Counsel, and Hans A. Klagsbrunn, Counsel, both of Washington, D. C., and Sol A. Liebman, of New York City, of counsel), for appellee.

Before SWAN, CLARK, and PATTERSON, Circuit Judges.

SWAN, Circuit Judge.

This appeal is before us upon a record made up pursuant to Rule 76 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The question presented is whether the trial court erred in dismissing

the complaint without costs and in denying the defendants' application for an additional allowance on the theory, stated in the court's opinion, D. C., 29 F.Supp. 853, that no provision of law permits the imposition of costs against the Reconstruction Finance Corporation.

■ In equity and in admiralty the imposition of costs is so largely a matter within the discretion of the trial court that a decree relating to costs alone will not ordinarily be reviewed by an appellate court. Canter v. Insurance Companies, 3 Pet. 307, 319, 7 L.Ed. 688; Du Bois v. Kirk, 158 U.S. 58, 67, 15 S.Ct. 729, 39 L.Ed. 895; Wingert v. First Nat. Bank, 223 U.S. 670, 672, 32 S.Ct. 391, 56 L.Ed. 605. But the rule does not apply when, as in the case at bar, the power of the court, and not merely the exercise of its discretion, is the controverted question. Newton v. Consolidated Gas Co., 265 U.S. 78, 83, 44 S.Ct. 481, 68 L.Ed. 909; United States v. Knowles' Estate, 9 Cir., 58 F.2d 718; Stallo v. Wagner, 2 Cir., 245 F. 636; In re Michigan Central R. Co., 6 Cir., 124 F. 727.

■ Reconstruction Finance Corporation is a corporation created by the act of January 22, 1932, for the purpose of providing emergency financing facilities in the interest of agriculture, commerce and industry. 47 Stat. 5, see also 47 Stat. 709, 48 Stat. 1108, 15 U.S.C.A. § 601 et seq. Its capital stock is owned by the United States and its affairs are managed by a board of directors consisting of three ex officio members and four other persons appointed by the President of the United States by and with the consent of the Senate. Beyond doubt it is a governmental agency for which the corporate form was adopted for administrative convenience. Baltimore Nat. Bank v. Tax Commission, 297 U.S. 209, 211, 56 S.Ct. 417, 80 L.Ed. 586; Langer v. United States, 8 Cir., 76 F.2d 817, 823. Section 4 of the act creating the corporation gives it power "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal." 47 Stat. 6, 15 U.S.C.A. § 604. The present suit was brought to enforce supposed property rights in certain trademarks which the plaintiff had acquired under a bankruptcy sale of the previous corporate owner to which the plaintiff had made a loan. On the merits the case went against the plaintiff. D.C., 28 F.Supp. 920. Were it an ordinary private corporation

costs would undoubtedly have been awarded to the successful defendants.

Rule 54(d) of the Rules of Civil Procedure reads as follows: "(d) Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. * * *" This rule is merely declaratory of existing law with respect to the imposition of costs against governmental agencies. There is no statutory provision expressly permitting the taxation of costs against the appellee. Hence the appellants must find an implied permission if they are to prevail.

■ It is well settled that when the United States is a litigant, whether suitor or defendant, costs are not taxable against it in the absence of direct statutory authorization. United States v. Chemical Foundation, 272 U.S. 1, 20, 47 S.Ct. 1, 71 L.Ed. 131; United States v. Worley, 281 U.S. 339, 344, 50 S.Ct. 291, 74 L.Ed. 887; The Glymont, 2 Cir., 66 F.2d 617, 619; United States v. Knowles' Estate, 9 Cir., 58 F.2d 718. But these cases are not necessarily controlling when special governmental activities are conducted through the medium of a corporate instrumentality endowed with many of the attributes of a private corporation, including the power to sue and the liability to be sued. As Mr. Justice Frankfurter remarked in Keifer & Keifer v. Reconstruction F. Corp., 306 U.S. 381, at page 388, 59 S.Ct. 516, at page 517, 83 L.Ed. 784, "the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work." There the question was whether a Regional Agricultural Credit Corporation was suable. Its charter was silent on the subject. The problem was stated by the court, 306 U.S. at page 389, 59 S.Ct. at page 518, 83 L.Ed. 784: "Congress may, of course, endow a governmental corporation with the government's immunity. But always the question is: has it done so?"

■ The opinion then went on to show the recent trend of congressional policy and to hold the legal position of Regional Agricultural Credit Corporation in respect to suability to be the same as though Congress had expressly empowered it to sue and be sued. Other recent cases in the Supreme

Court also indicate that when authority is given to sue a governmental corporation it is to be liberally construed. See Continental Nat. Bank v. Rock Island Ry. Co., 294 U.S. 648, 684, 55 S.Ct. 595, 79 L.Ed. 1110; United States v. Shaw, 60 S.Ct. 659, 84 L.Ed. ——; Federal Housing Administration v. Burr, 60 S.Ct. 488, 84 L.Ed. ——. In the case last cited the Housing Administration claimed immunity from garnishment. In denying this claim the opinion of Mr. Justice Douglas (60 S.Ct. page 490, 84 L.Ed. ——) states that, in the absence of reasons to the contrary, "it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued', that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." It was also held that, although the federal statute was silent on the subject, execution under the judgment was part of the civil process embraced in the "sue and be sued" clause and might be issued against funds in possession of the Housing Administration, though not against funds or property of the United States. In the light of these decisions we are led to the conclusion that in conferring upon the appellee the power to sue and be sued, Congress intended to subject it to the ordinary incidents of a suit, one of which is the imposition of costs against an unsuccessful litigant. If the rendition of a judgment against the Reconstruction Finance Corporation, implicit in permitting it to be sued, is not an interference with its governmental activities, we can see no reason for supposing that immunity was granted with respect to the small additional sum that would normally be added to the judgment as costs.

Further indication that a wholly owned governmental corporation is to be treated as a private corporation when the problem is one of suability is to be found in Sloan Shipyards Corp. v. United States Fleet Corp., 258 U.S. 549, 42 S.Ct. 386, 66 L.Ed. 762. At page 567 of 258 U.S., at page 388 of 42 S.Ct., 66 L.Ed. 762, Mr. Justice Holmes stated that where a governmental instrumentality is incorporated "you have a person, and as a person one that presumably is subject to the general rules of law." Another case looking in the same direction is Missouri Pacific R. Co. v. Ault, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087.

There, although the clause allowing suit against the Director General of Railroads was not the usual "sue and be sued" clause, and seemed in terms to embrace all kinds of liability, it was held not to sanction the recovery of penalties, but to include interest and costs as part of the usual compensatory damages.

The appellee cites National Home v. Wood, 7 Cir., 81 F.2d 963, and Federal Deposit Ins. Corp. v. Casady, 10 Cir., 106 F.2d 784, as opposed to the conclusion we have reached. The first is readily distinguishable by reason of the statute involved, 38 U.S.C.A. § 11d. See National Home v. Wood, 299 U.S. 211, 212n, 57 S.Ct. 137, 81 L.Ed. 130. With the second we must respectfully disagree if the legal position of the Federal Deposit Insurance Company is the same as that of Reconstruction Finance Corporation in respect to costs.

In our opinion the district court had power to allow costs to the defendants on dismissal of the complaint, and they are to be allowed as of course unless the district court otherwise directs. We think it was also within the power of the trial court, at his discretion, to grant the motion for an additional allowance. We express no opinion as to how his discretion should be exercised; we are concerned only with the question of his power. The order denying the motion is reversed in order that the district court may entertain the application for an additional allowance in the light of the appropriate equitable considerations. Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184.

The cause is remanded in order that the district court may exercise his discretion both as to normal costs and as to the motion for an additional allowance. The appellants are awarded appellate costs.

CLARK, Circuit Judge (dissenting).

Though Judge SWAN'S opinion is persuasive indeed, I think it results in an order for the payment of government funds to private persons without authorization of law. Even as between private litigants, costs, at least in an equity suit, are not a matter of right to a litigant, but are purely at the discretion of the court. Gold Dust Corp. v. Hoffenberg, 2 Cir., 87 F.2d 451, 453; Ex parte Peterson, 253 U.S. 300, 317, 40 S.Ct. 543, 64 L.Ed. 919; Payne, Costs in Common Law Actions in the Federal Courts, 21 Va.L.Rev. 397, 399. And costs

are never awarded against the United States except where there is direct statutory authority going beyond mere permission to bring suit. The opinion cites examples of the many precedents. See also Note, 8 Ann.Cas. 398; 21 Va.L.Rev. 416; 28 U.S.C.A. §§ 548, 555; Rule 32.5 of the Supreme Court, and Rule 29.4 of this Court; and compare Guaranty Trust Co. v. United States, 304 U.S. 126, 134n, 58 S.Ct. 785, 82 L.Ed. 1224; Globe & Rutgers Fire Ins. Co. v. United States, 2 Cir., 105 F.2d 160, 165, 167; 28 U.S.C.A. §§ 258, 870.[1]

This immunity would appear to apply to a governmental corporation, exercising governmental functions in place of the national government itself, just as much as does tax immunity. Cf. Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 477, 59 S.Ct. 595, 83 L.Ed. 927, 120 A.L.R. 1466. And if any corporation is to be exempt, certainly the Reconstruction Finance Corporation must be included in the list, for it has been made the direct loaning authority of the United States, a conduit from the United States Treasury for the supplying of financial assistance for the rehabilitation of industry and commerce, threatened with prostration as a result of the great depression. Baltimore National Bank v. State Tax Commission, 297 U.S. 209, 211, 56 S.Ct. 417, 80 L.Ed. 586; Langer v. United States, 8 Cir., 76 F.2d 817, 823; United States v. Lewis, D.C.W.D.Ky., 10 F.Supp. 471; cf. State Tax Commission v. Van Cott, 306 U.S. 511, 515, 59 S.Ct. 605, 83 L.Ed. 950.

Outside of the decision below, D.C.W.D. N.Y., 29 F.Supp. 853, the only precedents dealing directly with costs against governmental corporations are those denying any award. National Home v. Wood, 7 Cir., 81 F.2d 963, affirmed 299 U.S. 211, 57 S.Ct. 137, 81 L.Ed. 130;[2] Federal Deposit Ins. Corp. v. Barton, 10 Cir., 106 F.2d 737; Federal Deposit Ins. Corp. v. Casady, 10 Cir., 106 F.2d 784. These are governmental corporations, which are, if anything, less engaged in exercising functions of sovereignty than is appellee here. Recent cases in the Supreme Court, referred to in the opinion, show the care and caution with which that Court has proceeded in discovering a legislative intent for even suability of particular corporations. Thus, Keifer & Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, and Federal Housing Administration, Region No. 4 v. Burr, 60 S.Ct. 488, 84 L.Ed. ——, allowed suits in situations which do not appear to be an extension of previous conceptions.[3] The theory of governmental immunity is restated and applied

[1] The history of 28 U.S.C.A. § 870 seems to me instructive because of what the statute does not say. That section originally provided that no bond on appeal should be required of the United States or a party acting by its direction, but in case of adverse decision "such costs as by law are taxable against the United States" or the party acting for it should be paid out of the contingent fund of the department under whose directions the proceedings were instituted. This statute was held to deal only with costs on appeal, which, however, were subject to the rules of court above cited. Treat v. Farmers' Loan & Trust Co., 2 Cir., 185 F. 760. In 1934, it was amended to include specifically governmental corporations, 48 Stat. 1109; it has been held to apply to the appellee here. In re New York Investors, 2 Cir., 79 F.2d 179, certiorari denied Endelman v. Reconstruction Finance Corp., 296 U.S. 649, 56 S.Ct. 308, 80 L.Ed. 462.

[2] The force of this precedent does not seem to me destroyed because the statute, 38 U.S.C.A. § 11d, authorizes suits in the district courts and court of claims "according to the ordinary provisions of law governing actions against the United States, and such courts shall have the power to enter judgment against the United States, with interest, in the same manner and to the same extent as if said corporation were a party defendant." This language affords a narrow basis for according this corporation alone an immunity from costs; rather does it suggest that Congress did not think of a judgment against the United States as differing in "manner" and "extent" from one against a corporation of this nature.

[3] In the Keifer case, supra, the Court held the Regional Agricultural Credit Corporation, the child of the Reconstruction Finance Corporation which is subject to suit, liable for negligent care as a bailee of livestock, a wrong not "disassociated from carrying out the very transaction which brought it into existence." In the Burr case, supra, suit by the garnishee process was held to be within the statutory authority to be sued; the Court carefully pointed out, however, that if the Administration had no funds they could not be obtained from the Treasurer of the United States by any process and hence execution in the action might prove futile.

in the latest decision. United States v. Shaw, 60 S.Ct. 659, 661, 84 L.Ed. ——.[4]

As the opinion states, complete immunity for the government has been properly criticized, and reforms have been advocated relieving the citizen of manifest disadvantage from injury by the state. Compare Borchard, State and Municipal Liability in Tort—Proposed Statutory Reform, 20 A.B.A.J. 747, with bibliography; and United States v. Petroleum Nav. Co., 2 Cir., 109 F.2d 699. But all suggestions for legislative reform have recognized the need of limitation and have provided careful restrictions on governmental responsibility, in order to prevent indiscriminate raids on the public treasury. Although costs have been said to be an "anachronism" in modern litigation (R. H. Smith, 3 J.Am.Jud. Soc. 112, 115), a policy favoring the award of reasonable costs against the government in the discretion of the court might well be supported before Congress. Even so, it seems rather doubtful whether a case such as the present one should be included. Here appellee loaned money to the Menihan Corporation, when the latter was in financial distress and on the security of its corporate name and special trademarks. Upon insolvency of the Menihan Corporation, appellee was unable to collect its loan. In this action it was held powerless to prevent a new corporation, J. G. Menihan Corporation, from making use of the similar corporate name and the same trade-marks, and relief was also denied against J. G. Menihan, Sr., president of both corporations. D.C.W.D.N.Y., 28 F. Supp. 920. In the light of such a decision, however necessary it may be, the adoption here of what is really a new policy seems hardly appropriate. Carried to the extent of supporting an award of counsel fees— "almost uniformly" not granted even in equity, Gold Dust Corp. v. Hoffenberg, supra—when legal authority is so doubtful and the equities so opposed, the step, in my judgment, is quite undesirable.

---

[4] Compare the statement of Mr. Justice Reed: " * * * The reasons for this immunity are imbedded in our legal philosophy. They partake somewhat of dignity and decorum, somewhat of practical administration, somewhat of the political desirability of an impregnable legal citadel where government as distinct from its functionaries may operate undisturbed by the demands of litigants. A sense of justice has brought a progressive relaxation by legislative enactments of the rigor of the immunity rule. As representative governments attempt to ameliorate inequalities as necessities will permit, prerogatives of the government yield to the needs of the citizen. * * * It is not our right to extend the waiver of sovereign immunity more broadly than has been directed by the Congress."