**Anna Emelianov MARTYNIUK et al.**

v.

**COMMONWEALTH OF PENNSYLVANIA and United States of America.**

No. 43543.

United States District Court
E. D. Pennsylvania.

March 26, 1968.

Ostroff & Lawler, Philadelphia, Pa., for plaintiffs.

H. W. Salus, Jr., Philadelphia, Pa., for the Commonwealth.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for the United States.

## OPINION AND ORDER

TROUTMAN, District Judge.

This matter is before the Court for disposition of defendants' motions pursuant to Rule 12(b) of the F.R.Civ.P., to dismiss this action for lack of jurisdiction.

Gregory Martyniuk, a Russian immigrant, and a veteran of the armed forces, died intestate in a Veterans' Administration Hospital on August 12, 1950. He left an estate in excess of fifty thousand dollars ($50,000.00), representing disability compensation that had been paid to him by the Veterans' Administration. At the audit of the Administrator's account in the Orphans' Court of Philadelphia County, three sets of claimants to the fund appeared:

1. Anna Martyniuk and Mikhail Martyniuk, present plaintiffs, and residents of the U. S. S. R., appearing through local counsel and claiming to be the wife and the son of the decedent;

2. The United States claiming as trustee for the General Post Fund pursuant to 38 U.S.C. §§ 5220–5228;[1] and

---

1. 38 U.S.C. § 5220(a): "Whenever any veteran (admitted as a veteran) shall die while a member or patient in any facility, or any hospital while being furnished care or treatment therein by the Veterans' Administration, and shall not leave surviving him any spouse, next of kin, or heirs entitled, under the laws of his domicile, to his personal property as to which he dies intestate, all such property, including money and choses in action, owned by him at the time of death and not disposed of by will or otherwise, shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post

3. The Commonwealth of Pennsylvania claiming as custodian pursuant to 72 P.S. § 1314 and in the alternative claiming under the so-called "Iron Curtain Act", 20 P.S. §§ 1155–1159.[2]

When the account of the administrator came before the Auditing Judge, he appointed a Master to ascertain whether any heirs existed. On behalf of the Russian claimants there were produced before the Master a power of attorney and affidavits executed by the claimants before the American Consul in Moscow and depositions and other documentary evidence taken before a Russian notary and authenticated by the Consul. The Master refused to accept these documents as proof of heirship. Local counsel for the Russian claimants then filed a petition with the Court en banc for letters rogatory to take the testimony of his clients in Russia. In April of 1955 the Court denied this petition.[3] No exception was filed to this decree and no appeal was taken from it.

The Russian claimants filed exceptions to the refusal to accept the documentary matter into evidence and the United States also took exception. The Orphans' Court affirmed the conclusion of the Auditing Judge that the Russian claimants failed to prove heirship and ordered that the estate be paid into the Treasury of the Commonwealth of Pennsylvania

pursuant to 72 P.S. § 1314 until such time as the existence or non-existence of heirs of the decedent could be conclusively established. Estate of Martinzik, 25 Pa.Dist. & Co.2d 701 (1962). The United States has not objected to the ruling of the Court directing the payment of the fund into the State Treasury and has not otherwise pursued its claim to the estate pursuant to 38 U.S.C. § 5220.

The plaintiffs have filed suit in this Court, naming the United States and the Commonwealth of Pennsylvania as defendants, demanding judgment "declaring them to be the heirs of the decedent and awarding them the funds on deposit with the COMMONWEALTH OF PENNSYLVANIA in the approximate sum of Fifty-Four Thousand ($54,000.00) Dollars with interest and costs."[4] The complaint further alleges that in support of their demand for a declaration of heirship, the plaintiffs require the use of the Federal procedural devices in order to obtain depositions, interrogatories or letters rogatory.

The defendants contend (a) lack of jurisdiction to hear the present controversy on the basis of governmental immunity, (b) absence of a Federal question, and (c) inability of a Federal court to decide what is essentially a probate matter.

---

Fund (hereinafter in this subchapter referred to as the 'Fund'), a trust fund prescribed by section 725s(a) (45) of title 31."

2. In its brief in support of its motion to dismiss, the Commonwealth of Pennsylvania asserts that in the event the plaintiffs are able to prove heirship they would still not be entitled to the estate unless they could establish that they would have use, control and enjoyment of the funds in accordance with the so-called Iron Curtain Act, 20 P.S. §§ 1155–1159. A recent decision by the Supreme Court of the United States filed since the instant case was argued, creates a question in this Court's mind as to the constitutionality of that Act. Zschernig et al. v. Miller, Administrator, et al., 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (January 15, 1968). However, it does not appear that this

development has any effect upon the jurisdictional questions here involved since the plaintiffs have indicated no desire to attack the constitutionality of this Act in order to establsh a basis for jurisdiction.

3. Whether the refusal by the State courts in this instance to permit the issuance of letters rogatory has such a direct impact on foreign relations as to render it unconstitutional has not been raised by the plaintiffs to establish a basis for jurisdiction. See footnote 2, supra.

4. Although the complaint asks for coercive relief in the sense that an award of the funds is requested to be made by this Court, it seems quite clear, under notice pleading, that the plaintiffs have also pleaded a cause of action for a declaration of their right to share in the estate within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

■ It is now well settled that civil liability may not be imposed upon the sovereign except to the extent and in the manner to which it has consented. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Ickes v. Fox, 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525 (1937). This rests either on the theory that the United States is the institutional descendant of the Crown and enjoys its immunity or on a metaphysical doctrine that there can be no legal right as against the authority that makes the law.

■ The plaintiffs contend that since Congress has given the United States a potential claim pursuant to 38 U.S.C. § 5220 and since the United States asserted that claim in the Orphans' Court proceedings, its immunity has thereby been waived. But this overlooks the fact that although the United States may have a potential claim and did seek to assert it, it has not seen fit to pursue its claim. In any event, from the mere fact that the United States has a claim by virtue of 38 U.S.C. § 5220, it does not follow that Congress intended to waive the immunity of the United States from suit. To sustain such an argument and permit suits against the United States in every case where the United States has a claim by virtue of an Act of Congress would be to virtually emasculate the doctrine of sovereign immunity and render the requirement of consent vitually meaningless. Moreover, from the fact that want of consent is a fundamental defect which may be asserted at any time, State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939); Mellos v. Brownell, 102 U.S.App.D.C. 67, 250 F.2d 35 (1958), it follows that it is not subject to estoppel and consequently cannot be waived and was not here waived in asserting a claim in the Orphans' Court on behalf of the United States. It can only be waived by Congress. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940).

■■ On a number of occasions Congress has successively broadened the consent of the United States to be sued. The Court of Claims was created to determine money claims against the Government founded on Acts of Congress, or regulations of executive departments, or express or implied contracts with the Government. This jurisdiction was expanded by the passage of the Tucker Act, which grants jurisdiction additionally in cases founded upon the Constitution, and in cases for damages not sounding in tort. 28 U.S.C. §§ 1346(a)(2), 1491. Jurisdiction under the Tucker Act is in the Court of Claims or, if the claim does not exceed a certain amount, now $10,000.00, in the District Court. The plaintiffs have not attempted to invoke the jurisdiction of this Court under the provisions of the Tucker Act. Were it to be so argued, however, it seems clear that this Act is not a waiver of sovereign immunity where declaratory and other equitable relief is sought. Wells v. United States, 280 F.2d 275, 277 (9th Cir. 1960); Blanc v. United States, 244 F.2d 708, 709 (2nd Cir. 1957). Were it to be argued that the plaintiffs are asking for coercive relief, in the sense that they request this Court to award them the estate, it seems clear that no Federal claim appears on the face of the complaint and this Court would then lack jurisdiction for that reason.[5]

■ The jurisdiction of the Federal Courts to entertain suits against the United States was further expanded by the Federal Tort Claims Act. 28 U.S.C. § 1346(b). Although it contains many exceptions, the Act recognizes that the United States should be liable for the negligence of government employees to the same extent as anyone else. The plaintiffs have not attempted to avoid

---

5. In addition, only claims for $10,000.00 are cognizable in the District Courts under the Tucker Act. We have here a claim for a sum far in excess of $10,000.- 00. Thus, assuming the Tucker Act covers a claim such as this, and we do not decide that it does, the controversy is not within the jurisdiction of this Court.

the doctrine of sovereign immunity by reference to this Act and we can conceive of no possible basis upon which they could do so.

In addition to the statutes already discussed, there are numerous other statutes, of less general import, by which the United States has waived its immunity from suit, none of which furnish any conceivable basis for waiver in this case: 28 U.S.C. § 1346(a) (1) (suits to recover taxes); 46 U.S.C. § 741 et seq. (suits in Admiralty Act); 46 U.S.C. § 781 et seq. (Public Vessels Act); 28 U.S.C. §§ 1347, 2409 (partition actions where United States is a tenant in common or joint tenant); 41 U.S.C. § 113(b) (suits on contracts); 28 U.S.C. § 1353 (rights to Indian lands); 42 U.S.C. § 405(g) (actions under Social Security Act).

While 38 U.S.C. § 5226 permits the filing of claims against the United States for the assets of the estate of a deceased veteran, that section by its terms contemplates the award of the estate to the trustee of the General Post Fund and is not a general waiver of immunity in this area. Unlike the case of Nat.onal Home for Disabled Volunteer Soldiers et al. v. Wood, Administrator, 299 U.S. 211, 57 S.Ct. 137, 81 L.Ed. 130 (1936), in the present case the estate of the decedent was never awarded to the United States and the United States has not elected to pursue its claim. To permit a suit against the United States under such circumstances would be to compel the United States to pursue and adjudicate a claim which it may very well have elected to abandon. The United States has not consented to such a suit and the United States' motion to dismiss for lack of jurisdiction on the basis of governmental immunity must be granted. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); State of Minnesota v. United States, supra.

Having no jurisdiction over the plaintiffs' claim against the United States, we are unable to conceive of any possible basis, nor have the plaintiffs attempted to present one, for jurisdiction over the plaintiffs' claim against the Commonwealth of Pennsylvania independent of the claim against the United States. Accordingly, we see no reason to discuss the governmental immunity of the Commonwealth of Pennsylvania, nor do we see any reason to discuss the other bases upon which the defendants attack the jurisdiction of this Court; rather, we are compelled to dismiss the entire action for lack of jurisdiction.