In re JAYSEE CORSET CO.

(District Court, S. D. New York. November 9, 1911.)

1. TRADE-MARKS AND TRADE-NAMES (§ 33*)—CONVEYANCE APART FROM BUSINESS RIGHTS OF ASSIGNEE.

Conveyance of a trade-mark, unaccompanied by any business to which it had been previously attached, conferred no title on the assignee.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 37; Dec. Dig. § 33.*]

2. BANKRUPTCY (§ 257*)—GOOD WILL—SALE.

Where the trustee of a bankrupt corporation, owning certain trade-marks and trade-names, sold the corporation's goods and chattels without any attempt to sell the good will of the bankrupt's business, such sale operated to destroy both the good will and the trade-marks, so that neither the good will nor the trade-marks could be thereafter a proper subject of sale by the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 356, 357; Dec. Dig. § 257.*]

3. BANKRUPTCY (§ 257*)—GOOD WILL—SALE BY TRUSTEE—WORTHLESS ASSETS —FORBIDDING SALE.

Where a bankrupt's trustee sold the assets of the bankrupt, without the good will and trade-marks, which had been a part of the business, and thereby killed the good will, the bankruptcy court had authority to prevent him from thereafter attempting to make a sale of the trade-marks and good will, on the ground that he was attempting to sell something that was worthless.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 356, 357; Dec. Dig. § 257.*].

In Bankruptcy. In the matter of bankruptcy proceedings against the Jaysee Corset Company. On motion to prevent the bankrupt's trustee from selling the trustee's right, title, and interest in and to the good will of the bankrupt, and in the trade-names "Jaysee" and "J. C." and the trade-marks "Jaysee" and "J. C." Granted.

J. J. Lesser, of New York City, for the motion.
C. L. Greenhall, of New York City, opposed.

HOUGH, District Judge. One Joseph Cohen was in business before the bankrupt corporation was organized. He owned a registered trade-mark, which he placed upon goods apparently manufactured and sold by himself. He turned over his business to the bankrupt corporation, which apparently took his assets and assumed his liabilities. He became the president of the corporation, but he did not formally assign to the corporation the registered trade-mark aforesaid.

The corporation so formed became bankrupt, and a trustee was duly appointed. Such trustee did not obtain possession of the certificate of registration of trade-mark. Shortly before the bankruptcy of the corporation, Cohen transferred to a third person the trade-mark, consisting of the letters "J. C.," and "the good will of the business in which the trade-mark is used." That third person in turn conveyed the trade-mark and good will to a new corporation (in which Cohen was interested), which now desires to prevent the trustee from making the sale above referred to.

The trade-mark in question, although standing in Cohen's name, was evidently used, and used only, in the business of the bankrupt corporation. Cohen had no business of his own in which the trade-mark was used.

[1] It may be true (as the trustee contends) that the transfer of Cohen's business to the bankrupt corporation, and the use by that corporation of the trade-mark (obviously with Cohen's consent), worked by operation of law a transfer of the trade-mark itself. However this may be, it is more obviously true that Cohen's conveyance of the trade-mark, unaccompanied by any business whatever, gave no title to his assignee, and therefore none in any subsequent grantee. It is to me clear (on the papers submitted) that whatever rights the present petitioner may have in the trade-mark "J. C." do not in any way depend upon Cohen's assignment, but only upon the continued use thereof in the petitioner's business. Petitioner may well have established by this time a (so-called) common-law trade-mark, but that is all.

[2] The assignment by Cohen of the paper trade-mark was made in May, 1910. In due course of time the trustee sold the goods and chattels of the bankrupt, but made no attempt to sell the good will of the bankrupt's business, nor the trade-mark; nor did he sell the business as a going concern. The effect of these proceedings by the trustee was to kill the good will and destroy the trade-mark; for it is admitted that this particular kind of trade-mark cannot pass, except in conjunction with the good will of a business. What has become of the bankrupt's business? It stopped by bankruptcy, was killed by the trustee's sale, and the present intended action on the part of the trustee is an attempt to galvanize it into life again, something which cannot be done.

It results from the foregoing considerations that, while the present petitioner has nothing of legal value by reason of any assignment from Cohen, neither has the trustee anything to sell. Even if he ever owned the paper trade-mark, he only got it as legally appurtenant to the good will of the business of the bankrupt; but such good will could not survive the sale of the bankrupt's chattels and the destruction of its business, for exactly the same kind of reason that made Cohen's transfer invalid for lack of a good will to accompany it. The final situation is therefore this: The trustee wishes to sell something that he does not own, and, indeed, something that no longer exists; i. e., the good will of the bankrupt's defunct business. And the party who seeks to prevent the sale rests his right to do so upon a worthless assignment from Cohen.

[3] It is difficult to say that there is any equity in such a situation; but this court has a duty to perform in preventing trustees from inadvertently making unwarranted representations. It is an error to suppose that the trustee, because he never sold the good will of the business of the bankrupt corporation, still owns it. He cannot own that which does not exist. If there be no good will to sell, then an assignment or transfer of the trade-mark, or any right or title therein or thereto, is worthless.

The trustee is therefore forbidden to make this sale.