RECONSTRUCTION FINANCE CORPORATION v. J. G. MENIHAN CORPORATION et al.

No. 2174.

District Court, W. D. New York.

Aug. 1, 1939.

921

Abbott, Rippey & Hutchens, of Rochester, N. Y. (Nims & Verdi, Percy E. Williamson, Jr., and Walter J. Halliday, all of New York City, of counsel), for plaintiff.

Werner, Harris & Tew and George H. Harris, all of Rochester, N. Y. (Frank Keiper, of Rochester, N. Y., of counsel), for defendant.

BURKE, District Judge.

This is a suit to enjoin trade-mark infringement and unfair competition. The plaintiff asks for an injunction against the use of the word "Menihan" either as a trade-mark or as part of a corporate name and against the use of the terms "Arch Aid" or "Menihan Arch Aid" as trade-marks for shoes. An accounting is also demanded.

The Menihan Company from which the plaintiff acquired its rights to the trade-names and trade-marks in question was in the business of manufacturing and selling shoes. The business prospered until about the year 1929 when its annual net sales were upwards of $3,000,000. From that time on the business of the company gradually receded. In 1934 it applied to the plaintiff for a loan. The Menihan Company had advertised and sold its product by the aid of the marks "Menihan" and "Arch Aid" and it did a nation-wide business. It distributed its shoes by maintaining retail shops of its own and by sales agencies with shops in many of the principal cities throughout the United States and Canada. Three separate loans were made by the plaintiff to The Menihan Company the aggregate amount of which was $250,000 and as security for which the plaintiff took mortgages and assignments of the real and personal property of the Menihan Company including its trade-marks and trade-names. The Menihan Company defaulted and in December of 1936 was adjudicated a bankrupt. At a public sale conducted by the trustee in bankruptcy the plaintiff purchased substantially all of the real and personal property of the bankrupt including the good will, trade-marks and trade-names.

In January, 1937, the defendant corporation was formed. The defendant J. G. Menihan, Sr., who had been president of The Menihan Company became its president. The new company began the manufacture and sale of shoes at Rochester, New York, and proceeded to use the trade-marks "Menihan" and "Arch Aid" in selling its product. By this suit the plaintiff seeks to prevent such use.

This is an attempt upon the part of the plaintiff to preserve the trade-marks and trade-names in gross separate and apart from the good-will of an existing business. In December, 1936, when The Menihan Company filed its voluntary petition in bankruptcy a receiver was appointed to take possession of the property of the bankrupt, to employ such help as might be necessary to preserve the assets, to collect the accounts receivable and to look after the interests of creditors until a trustee would be appointed. The receiver was given no authority to conduct the business nor did he conduct the business. He sold some shoes which had been manufactured but otherwise did nothing to continue the business. Nor did the trustee continue the business. He proceeded forthwith upon his appointment to liquidate the assets.

The trustee conducted a public sale in March, 1937. At the trustee's sale the plaintiff purchased the real estate, fixtures, furniture, machinery and equipment, all trade-marks, together with the good-will of the business of the bankrupt and such right as the bankrupt had to use the name "The Menihan Company" and the name "Arch Aid". Thereafter the plaintiff attempted unsuccessfully to sell the business intact. In September of 1937, immediately prior to the commencement of this action the plaintiff advertised for sale at public auction the furniture, machinery, lasts, dies, patterns and equipment which it had purchased at the trustee's sale. The sale was had on October 5, 1937. At that sale plaintiff disposed of to the public without restriction, all the physical assets of the bankrupt excepting the factory building with overhead shafting. It made

no attempt to sell the good-will nor the trade-marks and trade-names which it now claims to own and protection for which it seeks in this action.

■ The acts of the plaintiff itself were sufficient to destroy the business and good-will. The product which the old company sought to have identified in the minds of the public by the name "Arch Aid" was a corrective shoe designed to aid weak, defective or abnormal feet as the trade-mark implies. The trade, if any, to which the plaintiff succeeded is the trade in that product and not in some other product. It is not the trade in ordinary shoes nor in corrective shoes in general but in corrective shoes such as were designed and sold by the old company. In seeking protection for such trade the plaintiff's claim is that the public had come to know such corrective shoes as Menihan Arch Aid shoes. Everything that is necessary to the manufacture of that product is gone and as far as the proof shows, irrevocably so. The most essential elements, the lasts, dies and patterns were sold by the plaintiff itself who now seeks to have the trade protected. The plaintiff contends however that new lasts, dies and patterns could be purchased upon resuming active manufacture of shoes. It is true that new implements could be secured for the manufacture of shoes but there is no proof that they could produce the product sold by the old company as Arch Aid shoes. There is no proof that the plaintiff retained in connection with its claimed good-will even the designs or measurements or enough to preserve the essential idea of the corrective features of Arch Aid shoes. No vestige of the old business remains except the factory building. The entire personnel of the old company is gone. The factory has long since been closed. The business has been discontinued. The elements necessary to create Arch Aid shoes are gone. What is left does not constitute a business to which good-will, trade-marks and trade-names may attach.

■ A trade-mark is not susceptible of ownership except in connection with an existing business. It is a shield or protection for the good-will of the business. If there is no business there may be no good-will and nothing to protect by the use of a trade-mark. It is the trade and not the mark that is to be protected. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 414, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Company v. Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. "A trade-mark right cannot exist independently of some business in which it is used. The sole function of a trade-mark being to indicate the origin or ownership of the goods, it cannot exist apart from the business to which its use is incident. There is no such right known to the law as an exclusive ownership in a trade-mark apart from the right to use it in a business. It cannot exist as a right in gross". President Suspender Co. v. MacWilliam, 2 Cir., 238 F. 159, 161.

Plaintiff contends that prospective purchasers of the business and good-will were dissuaded from purchasing by reason of the defendant's use of the trade-marks. The only evidence tending to establish this is the negotiations by the Baris Shoe Company and L. V. Marks and Sons. The former was a jobber in the shoe business. The letter of inquiry made no reference to the purchase of the business but related solely to the purchase of the trade-marks and trade-name. A representative of the latter firm attended the auction sale at the time that the plaintiff sold the machinery, equipment, furniture and fixtures. He made inquiry of the auctioneer about the trade-names and subsequently wrote the plaintiff about the trade-name "Menihan Arch Aid". No reference was made in the negotiations to the purchase of the business. In fact this representative had seen with his own eyes the sale of the machinery and equipment and everything that was required to make the shoes.

Plaintiff relies on Koppel Industrial Car & Equipment Co. v. Orenstein & Koppel Aktiengesellschaft, 2 Cir., 289 F. 446. In that case the alien property custodian sold the American business and good-will of the German corporation as a going concern. After such purchase the appellant entered upon the manufacture and carrying on of the American business. The court pointed out that the sale was as complete as if it were a voluntary conveyance. The court cited as authority for its decision Peck Brothers & Co. v. Peck Brothers Co., 7 Cir., 113 F. 291, 296, 62 L.R.A. 81. In the latter case Peck Brothers & Co. became financially embarrassed and a bill in equity was filed by the owners of a majority of the stock against the corporation for an appointment of a receiver. Receivers were appointed who took charge of the corporation and man-

aged its business. Subsequently another corporation was formed by one of the receivers and this corporation proceeded to use the trade-name and to garner the business of Peck Brothers & Co. In that case the court said, "The name and designation was a property right belonging to, and a valuable asset of, the original Connecticut corporation. Its financial embarrassment caused no suspension of its manufacture or trade. That was continued by the receivers appointed under the bill filed manifestly for the purposes of reorganization." In the Koppel case the court also cited S. F. Myers Co. v. Tuttle, C.C., 183 F. 235, 237 and approved the reason for the decision of the District Court in that case. In the latter case the court said, "I think he was substantially the purchaser of the business as a going concern, and he is entitled to carry on the business without interference * * *."

One of the defenses urged is that plaintiff by its acts abandoned its right to the use of the trade-marks and trade-names. There was no abandonment in the strict sense of the term for abandonment presupposes the ownership of trade-marks and trade-names which can only be in connection with an existing business. For that reason the cases regarding abandonment and the intention to abandon the use of trade-marks and trade-names are inapplicable here. The plaintiff's acts amounted to more than abandonment. They amounted to the destruction of what was necessary to the existence of a business to which good-will, trade-marks and trade-names might attach. But even considering abandonment in its broader sense, Beech-Nut Packing Co. v. Lorillard, 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810, cited by plaintiff to sustain its contention that a trade-mark is not abandoned or destroyed as a matter of law merely through disuse, is distinguishable. In that case the Lorillard Company which claimed the right to use the trade-mark "Beechnut" on its tobacco continued at all times in the tobacco business. It merely suspended use of the trade-mark "Beechnut". In the case at bar not only the use of the trade-mark but the business itself was effectively discontinued.

Whether plaintiff relies for its rights to the exclusive use of the trade-mark "Arch Aid" on the mortgages, the assignment or the conveyance from the trustee in bankruptcy, it got no better or broader rights to such use than the old company had. It may be that the defendant J. G. Menihan, Sr., is estopped from asserting that the trade-marks are invalid but that does not apply to the corporate defendant nor to J. G. Menihan, Jr. Neither of the latter had any part in negotiating the loans nor did they make any representations as to the validity of the trade-marks. The plaintiff contends that although the words "Arch Aid" are descriptive, that through long use and association with shoes made by the bankrupt company it had attained a secondary significance and meant to the public shoes made by the old company. I do not think the proof is sufficient to establish such secondary meaning. It may be that the mark "Arch Aid" had that meaning in the minds of dealers familiar with the corrective shoes but the proof falls short of establishing that meaning in the minds of the public. The advertising that the company did along that line expressed only a desire on its part that "Arch Aid" would come to mean that.

If the plaintiff is right in its contention that "Arch Aid" had attained a secondary significance and meant to the public the line of corrective shoes sold by the old company, a determination by this court that the plaintiff has the exclusive right to the use of that mark would lead to a potential fraud in the hands of prospective purchasers of the mark. The public would then have a right to expect to get the same shoe under that name that it had bought from the old company. There is no proof that a purchaser of the trade-mark could deliver that product. In fact the necessary inference from plaintiffs' sale of everything that was necessary to create it is that a new user of the mark would have to substitute something else for the original.

The plaintiff has no trade as a basis upon which it may invoke the equity powers of this court to restrain acts of infringement and unfair competition. The bill of complaint should be dismissed. Settle findings, conclusions and a decree upon notice.