**HOUGH MANUFACTURING CORPORATION, Plaintiff,**

v.

**VIRGINIA METAL INDUSTRIES, INCORPORATED, Defendant.**

**Civ. A. No. 77–0414–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

June 16, 1978.

Joseph C. Knakal, Jr., Caskie, Frost, Hobbs & Hamblen, Lynchburg, Va., Thomas F. McWilliams, Dennis M. McWilliams, McWilliams & Mann, Chicago, Ill., for plaintiff.

James L. Sanderlin, Warren E. Zirkle, James H. Walsh, Richmond, Va., G. Cabell Busick, Mason, Fenwick & Lawrence, Washington, D. C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Hough Manufacturing Corporation, ("Hough"), brings this action against Virginia Metal Industries, Inc., alleging trade name and trademark infringement. Defendant has filed a counterclaim seeking declaratory and injunctive relief. Jurisdiction is attained pursuant to 28 U.S.C. § 1332. The case came before the Court upon a trial on the merits and is now ripe for disposition.

The ownership and use of the trade name Virginia Metal Products ("VMP") and the trademark VMP, which is signified by capital letters imposed on adjacent rectangles, are at issue in this litigation. Gray Manufacturing Company ("Gray") previously owned and used the trademark and trade name in connection with products manufactured by Gray's VMP Division, which consisted primarily of movable metal partitions. Gray filed a petition for bankruptcy on October 7, 1975.

At the Trustee in Bankruptcy's auction conducted on March 1 and 2 of 1976, Hough purchased certain assets of VMP, including the dies, engineering and production drawings, patents and names for five of VMP's fourteen product lines.[1] Prior to the auction, Hough had purchased an option to buy from the Anglican Foundation dies which VMP had leased from that organization to produce the remaining nine product lines. Hough did not exercise this option, however, and thereafter the defendant purchased these assets from the Foundation.

 Hough moved the physical assets of VMP which it had purchased from Orange, Virginia, where they had been utilized, to Janesville, Wisconsin.[2] In a newsletter dated May 1976, Hough issued a public statement: "Hough has NOT acquired Virginia Metal Products Company either in name or in fact. The company and its trademark VMP remain within the corporate framework of the parent—Gray Manufacturing Company." [Emphasis in original].

In May 1976, defendant Virginia Metal Industries, Inc. was formed as a Virginia corporation. In June of that year, VMI purchased the assets of the Anglican Foundation which were formerly leased to VMP.

---

1. These product lines accounted for some 85% of VMP's sales.

2. Defendant places great weight upon what it perceives to be the plaintiff's "unclean hands" reference, the movement of assets from Virginia to Wisconsin. The Court finds from the evidence that plaintiff knew that residents of the Orange, Virginia community were anxious that VMP's operations be resumed on that site, so that nearly 400 persons could be reemployed. Plaintiff intentionally, in what it apparently deemed to be appropriate business practices, misled Orange, Virginia residents, including some of the persons who organized defendant corporation, to believe that if plaintiff were the successful bidder at the Trustee's auction, plaintiff would reopen a metal partitions plant in Orange, Virginia. Relying upon this information, Orange, Virginia residents made no efforts either to bid against plaintiff or to encourage other potential manufacturers to do so.

The Court concludes, therefore, that plaintiff is indeed guilty of unclean hands in its procurement of VMP's physical assets. Since plaintiff concedes that it could not have purchased the VMP trademark and trade name "in gross" i. e. without having acquired a substantial portion of the bankrupt's assets, its purchase of these intangible assets is tainted as well. This conclusion would independently support the Court's holding, *infra*, to the effect that plaintiff may not obtain equitable relief against defendant.

VMI additionally began developing a movable metal partition product line which would directly compete with those lines purchased by Hough. In July 1976, VMI began soliciting orders and promoting its metal partition products under the trade name Virginia Metal Industries and the trademark "VMI" as the Court has heretofore described.

■ The Trustee in Bankruptcy was aware of VMI's selection and use of the VMI trade name and trademark in July 1976 and made no objection thereto.[3] After the Trustee concluded most of his duties, he permitted VMI to take over the VMP phone number and post office box.[4]

In September 1976, Hough renewed its efforts to purchase the VMP trade name and trademark from the Trustee. In October 1976, the Bankruptcy Court considered Hough's offer to purchase "the Trustee's interest" and the VMP trade name and trademark. VMI submitted an oral bid of $1,250.00 before the hearing in reference to the sale, but did not make any appearance.[5] At that hearing Hough raised its bid to $1,500.00 and purchased the trade name and trademark for that sum. The Trustee executed the bill of sale "without representation as to the validity of [the] trademarks,

trade names and trademark design" purchased by Hough. Hough thereafter began promoting its metal partition product lines under the label "Virginia Metal Products/Division of Hough Manufacturing Corp."

The parties stipulated at trial that their respective trade names and trademarks caused substantial confusion among prospective purchasers of movable metal partitions and the Court accepts that as factual.

■ Hough's claim of right to use the VMP label is predicated solely upon the Trustee's assignment of the Virginia Metal Products trade name and trademark in October 1976.[6] If this assignment is valid, Hough stands on the same footing as did Gray, and thus, VMI would be a prior user entitled to protection of its trade name. However, if the assignment is invalid, a matter to which the Court must address itself, VMI is the prior user, having commenced advertising in sales under the VMI label several months prior to Hough's promotion of its products under the VMP label.

It is clear that the Trustee in Bankruptcy could pass no greater rights in the VMP trademark and trade name than he then possessed. VMI asserts that at the time of

---

3. The Court expresses no opinion as to whether such acquiescence might constitute abandonment, so as to extinguish the Trustee's rights "and the rights of subsequent purchasers" of the VMP trademark and trade name.

4. Plaintiff does not raise the defense of unclean hands against defendant's counterclaim. However, the evidence discloses that an employee of the Trustee, who has since been employed by defendant, turned over to defendant inquiries from potential customers addressed to VMP and that defendant opened such inquiries and responded thereto. Plaintiff has introduced no evidence that the Trustee was responsible for or aware of this employee's inappropriate acts.

Moreover, the evidence established that after defendant took over the VMI phone number and post office box number, defendant continued to open mail addressed to VMP, and answered its phone "Virginia Metals."

The Court in no manner sanctions such behavior. However, the evidence reveals that VMI established its claim to first use of its name in July, 1976, independently of the aforementioned conduct. VMI officers and employees, most of whom were formerly employed by

VMP, had put together a mailing list, drawn from the collective memories, and executed a major mailing announcing VMI's products. Additionally, VMI affixed its name and mark to its products at least by July of 1976. Thus, the Court concludes that defendant's claim of right to use the VMI name and mark is not tainted by unclean hands in the procurement of that right, and it follows that defendant is entitled to protect its use of the VMI trade name and trademark.

5. The Court finds that defendant's bid was based upon its business judgment that it was worth $1,250.00 to avoid the instant litigation.

6. Hough claimed in its final brief that it also had used the VMP name and mark in connection with its advertisements of its products by July 1976. The Court finds from the evidence that the only use Hough made of the VMP trade name or trademark prior to October 1976 was in conjunction with the phrase "formerly manufactured by Virginia Metal Products." This limited use cannot establish a right to exclusive use of a trade name.

the purported assignment, the Trustee had no rights in the VMP label, and thus could assign no rights to Hough.

■ VMI's position is premised upon its contention that the good will of a business, and the trade names and trademarks to which that good will attaches[7] cannot survive the complete cessation of the business. Hough on the other hand contends that based on the facts of the instant case, VMP's good will continued even after the Trustee's sale of all manufacturing and production assets.[8] For the reasons which follow, the Court is of the view that plaintiff's position is unsupported by law.

■ The purpose of a trade name or trademark is to protect the good will of a business. When a company ceases business, the good will dissipates, and the name and mark no longer serve their essential function. It is clear, however, that good will may survive the cessation of business, at least temporarily. *Merry Hull & Co. v. Hi-Line Co.,* 243 F.Supp. 45 (S.D.N.Y.1965); 3 Callmann, *The Law of Unfair Competition Trademarks and Monopolies* (3rd Ed. 1969) § 78.5(a) at 498 [hereinafter cited as "Callmann"]. Nonetheless, the Trustee in Bankruptcy may, by his actions or inaction effect the demise of trademark and trade name. *Merry Hull & Co. v. Hi-Line Co., supra* at 50; *RFC v. J. G. Menihan Corp.,* 22 F.Supp. 180 (W.D.N.Y.1938); *In re Jaysee Corset Co.,* 201 F. 779 (S.D.N.Y.1911); 3 Callmann, § 78.5(a) at 504–05; 1 Nimms, *Unfair Competition and Trademarks* (4th Ed. 1947) § 17 at 87. The Court must look to all the facts and circumstances surrounding the cessation of business to determine whether the good will of a particular business survives.

In *In re Jaysee Corset Co., supra,* the Bankruptcy Trustee sold the physical assets of the business without attempting to sell the good will, or to sell the business as a going concern. The Court held that: "[T]he effect of these proceedings by the Trustee was to kill the good will and destroy the trade-mark[.]" *Id.* at 780.

Similarly, in *Reconstruction Finance Corp. v. J. G. Menihan Corp.,* 28 F.Supp. 920 (W.D.N.Y.1939) ("RFC. II") plaintiff bought all of the Bankrupt's assets, both tangible and intangible at a Trustee's sale. Plaintiff thereafter attempted to sell the business as a whole. Being unsuccessful, it sold virtually all of the physical assets of the business at public auction. No attempt in that instance however was made to sell the business' good will, trademarks and trade names. The Court refused to enjoin the defendant's use of the trademark formerly owned by the Bankrupt.

> The acts of the plaintiff itself was sufficient to destroy the business and good will. . . . Everything that is necessary to the manufacture of [Bankrupt's product] is gone . . . . No vestige of the old business remains except the factory building. The entire personnel of the old company is gone. The factory has long since been closed. The business has been discontinued. . . . What is left does not constitute a business to which good will, trademarks, and trade names may attach.

28 F.Supp. at 922.

Callmann explains,

> If no one acquires the bankrupt's good will or trade name after a receiver's sale, the exclusive property rights thereto will vanish; they then lie in the public domain . . . . No rights arise by succession from a later sale of the good will as a separate item. Any new rights in the name must be established by the new user.

---

7. "[T]he trademark is . . . a symbol of good will." 3 Callmann § 78.1 at 418. Defendant contends that the Trustee did not attempt to sell VMP's good will to Hough, but merely the VMP trade name and trademark. This attempt at distinction is specious. "Transfer of a trademark is the transfer of the good will it symbolizes." Callmann § 78.1 at 421.

8. Plaintiff relies heavily upon the fact that a few physical assets of the bankrupt, including a pump and some file cabinets remained in the Trustee's possession after the auction. The Court finds this fact to be irrelevant. The Trustee's testimony by deposition that *all* manufacturing and production assets were sold at the auction, is uncontroverted.

3 Callmann § 78.5(a) at 498. *See* McCarthy, *Trademarks and Unfair Competition,* § 18.9 at 623 (1973).

The instant plaintiff relies on two cases in support of its contrary position. In the first, *Merry Hull & Co. v. Hi-Line Co., supra,* the Court held that the mere bankruptcy of a business did not extinguish the good will of the business. While acknowledging that a Bankruptcy Trustee might effect the demise of the business' good will by his acts, the Court held that the Trustee's actions in that case, continuing the bankrupt's business, by manufacturing and selling his products until one month prior to the liquidation, kept the bankrupt's trademark alive, so that a sale of the trademark along with the physical assets of the business one month thereafter was valid.

The Court is of the view that the instant case is readily distinguishable from *Merry Hull.* Here, the Trustee made no effort to continue the bankrupt's business. Moreover, the good will was sold along with the physical assets of the business. As defendant so aptly pointed out in its brief,

> Throughout the transactions involved in *Merry Hull* by which the trademark and trade name passed from the Trustee to an auctioneer to the ultimate purchaser, the trademark and trade name plus the good will they represent remained in the hands of one who held the assets essential to the continuation of the business. In contrast, the Trustee in this case had none of the essential elements [of business] of Virginia Metal Products during the period between the liquidation [of substantially all physical assets] in March 1976 and the purported assignment of the trademark and trade name in October 1976.

*See* defendant's Reply Memorandum in Support of its Motion for Summary Judgment filed April 10, 1978 at 11–12.

The second case upon which plaintiff relies, *Elder Manufacturing Co. v. International Shoe Co.,* 194 F.2d 114, 39 C.C.P.A. 817 (1952), is also inapposite. In *Elder,* the Court set out the relevant facts as follows:

> The testimony discloses that the owners of The Bluff City Shoe Company decided to liquidate the assets of its business and that the real estate, certain lasts, dies, patterns and machinery was sold to appellee on July 16, 1925; that, at the time of this sale, The Bluff City Shoe Company had a substantial supply of shoes on hand and proceeded to sell them, the sale of the shoes on hand requiring a period of about one year; that on December 9, 1925, which was about five months after the sale of the real estate, machinery, etc., The Bluff City Shoe Company sold the trade-mark "Mark Twain" to appellee

> . . . . .

> Appellant contends that the above mentioned assignment was a "mere assignment-in-gross"; that no good will survived the liquidation of The Bluff City Shoe Company; and that, consequently, appellee is not entitled to the benefit of the early use by The Bluff City Shoe Company. *Id.* at 117.

The Court held that the assignment of the trademark was valid, relying upon Bluff's continuing sales of its inventory after liquidation of the manufacturing assets of the business.

In the instant case, the Trustee did not continue either manufacturing or marketing VMP's products. No inventory of any consequence remained after the cessation of business since the metal partitions are primarily "made to order." Thus, *Elder* does not support plaintiff's contention that the good will of a business can survive the cessation of both the manufacturing and marketing of that business' products.

The Court therefore holds that where, as here, all business operations cease and the tangible assets necessary for the resumption of business operations are separated from the good will of the business, the trade names and trademarks of that business cease to be protectable, exclusive property rights. Accordingly, the Trustee's purported assignment to plaintiff of VMP's trademark and trade name, some six months after the sale of VMP's manufacturing and production assets, is in the

Court's view invalid for purposes of conferring upon plaintiff the right to exclusive use of the VMP name and mark.

 Defendant has established that its use of the VMI name and mark predates plaintiff's use of the VMP name and mark, and conceding that these names are likely to cause confusion, defendant is entitled to relief against plaintiff's use of the VMP label.[9]

An appropriate order will issue.

---

9. Defendant has abandoned its claim for monetary damages.